**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| The Toro Company, | No. 08-CV-00248-DSD-SRN |
| Plaintiff. | |
| vs. | **FIRST AMENDED COMPLAINT** |
| Advanced Sensor Technology, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

---

Plaintiff, The Toro Company ("Toro"), for its Complaint against Defendant Advanced Sensor Technology, Inc. ("AST"), states:

**PRELIMINARY STATEMENT**

1. This is an action for damages and injunctive relief arising out of false and misleading statements AST has made and is continuing to make in its advertising and promotion of its wireless soil monitoring system known commercially as RZ-Wireless. AST has made and continues to make the false and misleading statements for the purpose of intentionally interfering with the present and prospective relationships between Toro and its distributors, customers, and potential customers for Toro's new wireless soil monitoring system known commercially as Turf Guard.

2. AST commenced making the false and misleading statements at a time calculated to cause Toro substantial and irreparable harm. In that regard, immediately prior to the Golf Industry Show to be held on January 31 – February 2, 2008, in Orlando, Florida at which Toro planned to prominently feature its new Turf Guard product, AST

falsely communicated to Toro's distributors, customers, and potential customers that, because of a patent rights acquired by AST, others could not legally sell or use wireless soil sensing equipment without permission of AST.  Further, AST issued a "**WARNING**" which falsely communicated to customers that the use of wireless soil sensing technology other than RZ-Wireless would likely infringe AST's recently acquired patent.

3.  Evidently wishing to prevent Toro and others from performing an informed analysis of the false statements, before the Golf Industry Show, AST issued the false statements without identifying the patent or first providing notice to Toro of any purported infringement.  Indeed, AST has ignored a request by Toro that AST provide Toro with an identification of the patent.  It was only after the Golf Industry Show began, and after AST continued to issue further "warnings" to potential customers, that AST identified the patent and accused Toro of infringement.

4.  This is also an action for Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 declaring that United States Patent No. 7,103,511 (the "'511 Patent") is not infringed by the manufacture, use or sale of the Toro wireless soil monitoring system known commercially as Turf Guard.

**PARTIES**

5.  Toro is a Delaware corporation with its principal place of business in Bloomington, Minnesota.

6.  AST is a Delaware corporation with its principal place of business in King of Prussia, Pennsylvania.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue lies in this District under 28 U.S.C. § 1391(b).

8. This Court has personal jurisdiction over AST. This action arises out of conduct by AST calculated to harm and which has harmed Toro, a Minnesota resident. AST has made false and misleading statements to Toro's customers and potential customers, including customers and potential customers in Minnesota. Moreover, upon information and belief, AST has purposefully, continuously and systematically conducts business in Minnesota by, *inter alia*, advertising, promoting and selling products in Minnesota. In that regard, AST sells its products in Minnesota through HYDROLogic. Accordingly to AST's website, HYDROLogic is a distributor for AST located in Plymouth, Minnesota.

## FACTS

9. Toro is a leading worldwide provider of outdoor landscaping products, support services, and integrated systems. Toro has an excellent reputation for superior quality with respect to both its products and services.

10. Toro markets its products and services through advertising in, *inter alia*, newspapers, national circulation magazines, industry publications, television commercials, the internet, and tradeshows.

11.     As a result of the innovation and quality of its products and services, together with the wide-spread advertising and promotion thereof, Toro has acquired a reputation for quality, integrity and innovation.

12.     One of Toro's new products is a wireless soil monitoring system known commercially as Turf Guard. While suitable for many applications, Turf Guard is particularly suited for golf course care and maintenance as it provides a wireless mesh networking of soil sensors, linking all greens, tees and fairways to a central control system. Turf Guard sensors provide real-time moisture, temperature and salt readings of the soil that can be used to adjust and customize irrigation at different locations on the golf course.

13.     AST manufactures and sells a wireless soil monitoring system known commercially as RZ-Wireless which competes with Turf Guard.

14.     AST has made statements in its advertising and promotional materials regarding its RZ-Wireless product, and by unequivocal implication the Turf Guard product of Toro, which are false or misleading.

15.     As part of its advertising and promotion, AST makes unqualified statements concerning its purported acquisition of exclusive rights of a "key U.S. patent on wireless data transmission." These statements are made without identification of the "key U.S. Patent" number. Certain of these statements are false or misleading. Examples of such false or misleading statements include:

    a.     That the patent provides AST with "exclusive licensing rights of soil monitoring systems."

    b.    That the patent is "fundamental to the wireless monitoring of soil in golf courses and similar applications and, as a result, companies without permission can not legally sell or use wireless soil sensing equipment using this essential technology."

16.    The false and misleading statements are made with an intent to wrongfully interfere with Toro's present and prospective relationships with distributors, customers, and potential customers.

17.    Underscoring AST's wrongful intent is a "**WARNING**" contained in AST's advertising and promotion which provides:

> **WARNING** – Because companies without permission can not legally sell or use wireless soil sensing equipment using the essential technology, using a wireless soil sensing technology other than RZ-Wireless is likely infringing on this key patent.

18.    AST began making the false or misleading statements at a time calculated to do maximum harm to Toro. Specifically, the statements, disseminated January 22 and 24, 2008, were made on the eve of the Golf Industry Show, a tradeshow in Orlando, Florida occurring on January 31 to February 2, 2008. The Golf Industry Show is an annual tradeshow and coincides with educational conferences put on by the Golf Course Superintendent Association of America, the National Golf Course Owners Association, and the Club Managers Association of America. The show consists of over one thousand exhibitors and suppliers, and is a critical opportunity for suppliers of products to the golf industry to make their products known to potential purchasers. It is at this time of year that golf courses decide whether to purchase new equipment and supplies, and the Golf Industry Show is the event at which suppliers showcase their new products and book orders. As known to AST, Toro is consistently a registered and prominent exhibitor at

5

the Golf Industry Show. Further, as undoubtedly believed by AST, Toro planned to launch and prominently feature Turf Guard at the 2008 Golf Industry Show.

19. AST began making the false or misleading statements without any advanced notice or information to Toro. AST ignored a request by Toro that AST provide an identification of its so-called key patent, thereby depriving Toro of an opportunity to provide an informed response to the marketplace including potential customers at the Golf Industry Show.

20. AST has actual knowledge of the falsity and/or misleading nature of its advertising claims and statements.

21. AST's acts complained of herein were and continue to be committed intentionally and willfully.

22. The conduct of AST has and will continue to cause irreparable harm to Toro, and the conduct will continue to cause deception of and damage to consumers. No monetary remedy would be adequate to fully compensate and protect Toro.

23. Toro has suffered and will continue to suffer monetary damages caused by AST's wrongful acts.

24. During the Golf Industry Show, and several days after the commencement of this action, AST, along with the purported assignee SIPCO, LLC, filed a Complaint in the United States District Court for the Eastern District of Pennsylvania alleging that SIPCO is the assignee of the '511 Patent, that AST is an exclusive licensee of SIPCO with regard to the commercial soil monitoring field use of the '511 Patent, and that Toro's product Turf Guard infringes the '511 Patent.

25. Toro's Turf Guard product does not infringe the '511 Patent.

26. There is an actual case or controversy with respect to the issue of infringement of the '511 Patent.

## COUNT ONE
## FALSE ADVERTISING – 15 U.S.C. § 1125(a)

27. Toro realleges and incorporates by reference the allegations contained in Paragraphs 1 through 26 hereinabove.

28. While engaging in the activities described above, AST has made and is making false representations, claims and statements in connection with goods distributed in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

29. By reason of AST's acts set forth above, Toro has been injured in its business and its property. The injury to Toro is and continues to be immediate and irreparable. An award of money damages alone cannot fully compensate Toro for its injuries, and Toro lacks an adequate remedy at law.

## COUNT TWO
## DECEPTIVE TRADE PRACTICES UNDER MINNESOTA STATE LAW

30. Toro realleges and incorporates by reference the allegations contained in Paragraphs 1 through 29 hereinabove.

31. AST's acts set forth above constitute deceptive trade practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44 *et seq.*

32. By reason of AST's acts set forth above, Toro has been injured in its business and its property. The injury to Toro is and continues to be immediate and

irreparable. An award of monetary damages alone cannot fully compensate Toro for its injuries, and Toro lacks an adequate remedy at law.

## COUNT THREE
## UNLAWFUL TRADE PRACTICES ACT

33. Toro realleges and incorporates by reference the allegations contained in Paragraphs 1 through 32 hereinabove.

34. AST's activities complained of constitute violations of the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09 *et seq.*

35. By reason of AST's acts set forth above, Toro has been injured in its business and its property. The injury to Toro is and continues to be immediate and irreparable. An award of monetary damages alone cannot fully compensate Toro for its injuries, and Toro lacks an adequate remedy at law.

## COUNT FOUR
## FALSE STATEMENT IN ADVERTISEMENT

36. Toro realleges and incorporates by reference the allegations contained in Paragraphs 1 through 35 hereinabove.

37. AST's acts set forth above constitute false statements in advertising in violation of the Minnesota False Statement in Advertisement Act, Minn. Stat. § 325F.67.

38. By reason of AST's acts set forth above, Toro has been injured in its business and its property. The injury to Toro is and continues to be immediate and irreparable. An award of monetary damages alone cannot fully compensate Toro for its injuries, and Toro lacks an adequate remedy at law.

## COUNT FIVE
## CONSUMER FRAUD UNDER MINNESOTA STATE LAW

39. Toro realleges and incorporates by reference the allegations contained in Paragraphs 1 through 38 hereinabove.

40. AST's acts set forth above constitute consumer fraud in violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 *et seq.*

41. By reason of AST's acts set forth above, Toro has been injured in its business and its property. The injury to Toro is and continues to be immediate and irreparable. An award of monetary damages alone cannot fully compensate Toro for its injuries, and Toro lacks an adequate remedy at law.

## COUNT SIX
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

42. Toro realleges and incorporates by reference the allegations contained in Paragraphs 1 through 41 hereinabove.

43. AST's acts set forth above constitute an intentional interference with prospective economic advantage between Toro and Toro's customers and potential customers.

44. As a result thereof, Toro has and will be damaged in an amount to be determined at trial.

## COUNT SEVEN
## DECLARATORY JUDGMENT – NO INFRINGEMENT OF '511 PATENT

45. Toro realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44 hereinabove.

46. The manufacture, use and sale of Turf Guard does not infringe the '511 Patent.

47. Toro is entitled to a declaratory judgment, inclusive of a finding that each claim of the '511 Patent, is not infringed by the manufacture, use or sale of Turf Guard.

## PRAYER FOR RELIEF

WHEREFORE, Toro prays for judgment as follows:

1. A preliminary and permanent injunction enjoining AST and its agents, employees, officers, servants, representatives, successors and assigns, and others in active concert, privity or in participation with AST:

   a. from using any of the false and/or misleading advertising statements described above;

   b. otherwise disseminating any false or misleading statements as to the nature, quality or characteristics of AST's goods and services or the nature, quality or characteristics of Toro's goods and services;

   c. to deliver up for destruction, or otherwise destroy all advertising and promotional materials containing false or misleading statements, and to correct such statements; and

   d. with such injunction including a provision directing AST to file with the Court and serve on Toro within thirty (30) days following the injunction a report in writing, and under oath, setting forth in detail the manner and form in which AST has complied with the injunction;

2. Requiring an accounting of profits made by AST as a result of the acts complained of here;

3. Awarding damages equal to three times the amount suffered as provided by 15 U.S.C. § 1117, together with attorneys' fees;

4. Declaring that the '511 Patent is not infringed directly, contributorily, or by inducement by any acts or activities of, or products manufactured, used, distributed or sold by Toro;

5. Enjoining AST, its agents, employees, officers, servants, representatives, successors and assigns, and others in active concert, privity or in participation with AST from threatening or otherwise harassing Toro and any and all distributors or customers of Toro with respect to any alleged infringement of the '511 Patent;

6. Awarding prejudgment interest; and

7. Awarding Toro its costs, disbursements, attorneys' fees, together with such other and further relief as this Court may deem just and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Toro requests a jury trial on all claims and issues triable by jury.

Date:  February 6, 2008        **OPPENHEIMER WOLFF & DONNELLY LLP**

By <u>s:/  David A. Prange</u>_____
    Edward M. Laine          #059535
    David A. Prange           #329976
3300 Plaza VII Building
45 South Seventh Street
Minneapolis, Minnesota  55402
Telephone:  (612) 607-7000
Fax Telephone:  (612) 607-7100
E-Mail:  ELaine@oppenheimer.com
       DPrange@oppenheimer.com
**ATTORNEYS FOR PLAINTIFF
THE TORO COMPANY**