UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-248(DSD/SRN)

The Toro Company,

       Plaintiff,

v.                                              **ORDER**

Advanced Sensor Technology, Inc.,

       Defendant.

    David B. Potter, Esq., David A. Prange, Esq., Edward M. Laine, Esq, and Oppenheimer, Wolff & Donnelly, 45 South Seventh Street, Suite 3300, Minneapolis, MN 55402, counsel for plaintiff.

    Grant D. Fairbairn, Esq., Kurt J. Niederluecke, Esq., Laura L. Myers, Esq. and Fredrikson & Byron, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on defendant's motion to dismiss for lack of personal jurisdiction and failure to join an indispensable party. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants defendant's motion.

**BACKGROUND**

This matter stems from a dispute between two competitors in the turf management business. Defendant Advanced Sensor Technology, Inc. ("AST") is a Delaware corporation with its principal place of business in King of Prussia, Pennsylvania. AST

manufactures and sells the RZWireless System ("RZWireless"), a wireless soil monitoring system for golf courses and other applications, and the RZAer System ("RZAer"), an aeration system. AST's RZWireless employs technology described in United States Patent No. 7,103,511 (the "'511 patent"), for which AST obtained an exclusive license in the field of commercial soil monitoring from SIPCO, the '511 patent's owner.

AST has no offices, personnel or bank accounts in Minnesota nor has it sold any products in the state. AST operates a website accessible to Minnesota residents, but AST products are not available for order directly from that site. AST also promotes its products through email, and of the 11,117 on its nationwide distribution list, 334 are Minnesota residents. AST is the successor company to Advanced Aeration Systems ("AAS") – the company that manufactured and sold the RZAer. In 2004, AAS contracted with Hydrologic, a Minnesota distributor, to sell AAS's products in Minnesota and the upper Midwest. This relationship lasted one year, and although AAS provided price quotes to two Minnesota golf courses, it neither sold nor installed any products in the state.

Plaintiff The Toro Company ("Toro"), a Delaware corporation with its world headquarters in Minnesota, manufactures and distributes lawn care and irrigation equipment. Among other products, Toro sells Turf Guard, a wireless soil monitoring sensor

system that Toro officially launched at the Golf Industry Show held this year in Orlando, Florida, from January 31 to February 2.

Just prior to the Golf Industry Show, AST circulated market communications discussing AST's newly acquired patent rights. The communications contained a warning that "companies without permission can not [sic] legally sell or use wireless soil sensing equipment using the essential technology [and] using a wireless soil sensing technology other than RZWireless is likely infringing on this key patent." (Buckley Decl. Ex. 2.) Following the golf show, AST posted and disseminated to golf industry professionals a link to a website similar in appearance to Toro's Turf Guard site but with claims that Toro was infringing on AST's intellectual property. Soon after, AST issued press releases and gave interviews in which it accused Toro of stealing its wireless turf management technology. (Id. Exs. 10, 11.)

Based upon AST's initial communications, Toro filed this action on January 28, 2008, asserting claims against AST for false advertising, deceptive trade practices, consumer fraud and intentional interference with prospective economic advantage. Three days later, on January 31, 2008, AST and SIPCO filed an action against Toro in the Eastern District of Pennsylvania for infringement of the '511 patent. On February 6, 2008, Toro amended its complaint in this action to include a claim for declaratory judgment of noninfringement of the '511 patent, and a month later

3

it amended its complaint again to include defamation and product disparagement claims. On March 7, 2008, AST moved to dismiss Toro's action for lack of personal jurisdiction and failure to join an indispensable party. The Pennsylvania action has been stayed pending resolution of AST's motion.

## DISCUSSION

**I.  Personal Jurisdiction**

AST argues that its contacts with Minnesota do not support personal jurisdiction. To survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). In the absence of an evidentiary hearing, a court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (quotations omitted). Because the Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due

Process Clause," the court need only consider due process requirements. Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." Romak, 384 F.3d at 984. "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Coen, 509 F.3d at 905 (citation and quotation omitted). A defendant should reasonably anticipate being haled into court in a forum state within which it "purposefully avail[ed] itself of the privilege of conducting activities, ... thus invoking the benefits and protections of its laws." Id. (citation omitted). A court considers five factors to measure minimum contacts: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004). The court gives significant weight to the first three factors. See id. Minimum contacts establish personal jurisdiction in a forum state under two theories: general and specific jurisdiction.

**A.   General Jurisdiction**

General jurisdiction is present when a defendant has "carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state." Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008). Toro argues that AST's attempted sales and regional distribution presence establish continuous and systematic contacts sufficient for general jurisdiction. The court disagrees. Although its former regional distributor operated out of the state, AST terminated its relationship with Hydrologic after one year. (Norley Decl. ¶ 8.) AST's limited presence in the state, therefore, was not continuous or systematic. Further, during Hydrologic's representation, AST secured no contracts from Minnesota businesses. Even if it had, "merely entering into a contract with a forum state resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." Bell Paper Box, Inc. v. Trans W. Polymers, Inc., 53 F.3d 920, 922 (8th Cir. 1995). For these reasons, AST is not subject to general jurisdiction in Minnesota.

**B.   Specific Jurisdiction**

Specific jurisdiction occurs when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities within that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472

6

(1985).  Toro argues that AST's website and email contacts establish specific jurisdiction in this case.  Letters, emails, faxes and telephone contacts "may, in conjunction with other contacts, support the exercise of personal jurisdiction, but such contacts alone are insufficient to satisfy due process."  Northrup King Co. v. Compania Productora Semilas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).  AST sent over 300 emails to golf industry members in Minnesota as part of its nationwide email distribution list, but it had no contacts outside of the emails.  Without more, even the relatively large amount of communication does not establish specific jurisdiction.  See Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 523 (8th Cir. 1996) (no personal jurisdiction despite numerous letters, faxes and telephone calls related to cause of action); Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 966 F. Supp. 833, 837 (D. Minn. 1997) ("Correspondence such as letters, facsimiles, and telephone conversations alone do not establish personal jurisdiction." (citation omitted)), aff'd, 148 F.3d 1355 (Fed. Cir. 1998).  As to its internet presence, a website that allows visitors to send email and view press releases and videos but does not offer products for sale or the ability to enter into contracts via the site is a passive site, and its accessibility does not serve as grounds for personal jurisdiction.  See Lakin v. Prudential Sec., Inc., 348 F.3d 704, 710-11 (8th Cir. 2003); Greenbelt Res. Corp. v. Redwood

7

Consultants, LLC, No. 07-4103, 2008 WL 22300710, at *7 (D. Minn. May 28, 2008). Accordingly, AST's emails to Minnesota residents and website accessible in Minnesota do not alone provide for specific jurisdiction.

Toro, however, maintains that jurisdiction is appropriate under Calder v. Jones, 465 U.S. 783 (1984), because AST allegedly committed intentional torts. When a plaintiff makes such allegations, a court evaluates additional factors to determine whether the defendant could "'reasonably anticipate being haled into court'" in the forum state. Id. at 790 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)); Dakota Indus., 946 F.2d at 1391 ("Calder requires the consideration of additional factors when an intentional tort is alleged."). Specifically, a court considers whether the alleged tortfeasor expressly aimed its intentional tortious conduct at the forum state and "knew that the brunt of th[e] injury would be felt" by the plaintiff in the forum state. Calder, 465 U.S. at 789-90; see also Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008) (alleged tortfeasor must know plaintiff would feel brunt of injury in forum state); Dakota Indus., 946 F.2d at 1390-91. While Calder lends support to jurisdictional claims, it does not provide an independent basis for personal jurisdiction in the Eighth Circuit. See Lindgren v. GDT, LLC, 312 F. Supp. 2d 1125, 1133 (S.D. Iowa 2004).

Toro argues that AST's allegedly tortious conduct was expressly directed at Minnesota - Toro's principal place of business. Under the Calder analysis, a court may consider a company's headquarters as the location in which it would feel the brunt of the injury. See Anheuser-Busch, Inc. v. City Merch., 176 F. Supp. 2d 951, 959 (E.D. Mo. 2001). Therefore, Toro experienced the brunt of the injury in Minnesota. Toro, however, has not demonstrated that AST expressly aimed its tortious conduct at Minnesota. Although it sent over 300 emails to Minnesota residents, the communications were part of a nationwide distribution list of over 11,000. Emphasizing the low percentage sent to Minnesota does not transform the inquiry from the forum's perspective to the defendant's, as Toro argues. Rather, it emphasizes that AST's actions were not "uniquely aimed" at Minnesota. Dakota Indus., 946 F. 2d at 1391; see Finley v. River N. Records, Inc., 148 F.3d 913, 916-17 (8th Cir. 1998) (fraudulent communications sent exclusively at forum). More important, as discussed above, AST's emails were accompanied by no other contacts with Minnesota. Even under Calder, effects without further contacts are insufficient to establish jurisdiction. For these reasons, the Calder test does not aid Toro's assertion of jurisdiction.

**II.  Transfer**

Where, as here, a court lacks personal jurisdiction, it may either dismiss the matter or, in the interest of justice, transfer it "to any other such court in which the action ... could have been brought at the time it was filed."  28 U.S.C. § 1631; <u>Superior Edge Inc. v. Maricopa County Cmty. Coll. Dist.</u>, 509 F. Supp. 2d 786, 795 (D. Minn. 2007).  In this case, litigation involving the same or similar facts and issues has been stayed in the Eastern District of Pennsylvania pending issuance of this order.  Therefore, because Toro can pursue its claims against AST in that action, the interest of justice does not require transfer to another court, and the court dismisses this action.[1]

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendant AST's motion to dismiss for lack of jurisdiction and failure to join an indispensable party [Doc. No. 26] is granted.
**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 25, 2008

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court

---

[1] Because Toro cannot assert personal jurisdiction over AST in Minnesota, the court does not address AST's claim that SIPCO is an indispensable party to the action.